DONOHUE et al. v. UNITED STATES.

No. 8701(2)

United States District Court
E. D. Missouri, E. D.

May 29, 1953.

Carroll J. Donohue, of St. Louis, Mo., for plaintiffs.

William W. Crowdus, U. S. Atty., and James C. Jones, III, Sp. Asst. to U. S. Atty., St. Louis, Mo., Homer R. Miller, Sp. Asst. to Atty. Gen., for defendant.

HULEN, District Judge.

By stipulation, the sole issue determinative of this case is whether plaintiff, an assignee for benefit of creditors of the taxpayer corporation, can have a part of the taxpayer's operating loss for year ending October 31, 1948, carried back, and thereby recover the income tax paid on the net income of a trustee under section 77B, 11 U.S.C.A. § 205(b), of a prior corporation taxpayer, for year ending October 31, 1946, under section 122 of the Internal Revenue Code, 26 U.S.C.A. We hold the taxpayer is not entitled to the carry-back, because it is not the same taxpayer as the debtor in the section 77B proceeding, as contemplated by section 122.

### Facts

Gast Brewery, Inc., a Missouri corporation, filed a petition for reorganization in this Court under section 77B. After many years of vicissitudes of profit and loss it prospered under the last trustee, Oliver T. Remmers, so as to permit presentation of a reorganization plan. The plan, presented and approved as provided by the Act, called for the formation of a new corporation and transfer of assets to the new corporation, with the general creditors taking preferred stock in lieu of their claims and being accorded a degree of control over the new corporation until their stock was retired. The new corporation was formed and the plan executed. The new corporation is the corporate plaintiff.

During the period February 1, 1946, to October 31, 1946, under operations by the trustee, Gast Brewery, Inc., had a net income of $54,010.73, upon which it paid a Federal income tax of $20,524.08. During the year ending October 31, 1948, the new corporation, taxpayer claimant in this case, had a net operating loss of $160,838.21. This was a year prior to its making an assignment for benefit of creditors and appointment of plaintiff assignee. Plaintiffs by this action seek to recover the $20,524.08 tax paid by this Court's trustee of the debtor, as a carry-back against its operating loss for the year ending October 31, 1948, under the terms of section 122 (b)(1) of the Code.[1]

### Conclusions

We are unable to conform to plaintiffs' plea that this case be decided on equitable principles. It is our view of the law that a taxpayer seeking a refund must be able to point to an applicable statute and show the claim comes within its terms. Whether and to what extent such claims shall be allowed under the facts of this case depends upon legislative grace alone. Only if a clear provision of the statute authorizes it, can a carry-back be allowed and a tax once paid be refunded. Plaintiffs

---

1. "(b) Amount of carry-back and carryover.
 "(1) Net operating loss carry-back.
 "(A) Loss for taxable year beginning before 1950. If for any taxable year beginning after December 31, 1941, and be-

fore January 1, 1950, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-back for each of the two preceding taxable years, except that the carry-back in the case of the first preceding taxable year shall be

have the burden of establishing the right to the carry-back and the payment sued for.

 Section 122(b)(1) is plain in its terms and does not in our judgment lend any support to plaintiffs' claim. The question resolves down to the comparatively narrow one: is plaintiff the same taxpayer as paid the tax of $20,524.08 for net income in 1946, under the section 77B proceeding in this Court? If not, the law has no application.

It is not necessary to view the payment of the tax, now sought, as paid by an officer of this Court, running the business of the debtor under court control, to hold the two taxpayers are not the same, although the Act under which the business was operated provides the Court shall have exclusive jurisdiction of the property of the debtor, with the right to dispose of the property. In fact the Act provides, on the trustee giving bond, the trustee shall have title to the property of the debtor under the terms of the bankruptcy acts.

We place our conclusions on the premise that plaintiff Gast St. Louis Brewing Company, a corporation, and its assignee plaintiff, is not the same corporation or taxpayer as Gast Brewery, Inc., who paid the tax.

Throughout section 77B we find repeated reference to "another corporation," in providing for consummation of a plan like the one executed in the case of debtor Gast Brewery, Inc. The parties to the reorganization proceeding, stockholders, and creditors of Gast Brewery, Inc., were told they were forming a "new corporation" when plaintiff corporation was formed as a part of executing the plan. We find the term "new corporation" used in presenting the plan,[2] a copy of which was sent to all stockholders and creditors. The same expression was used throughout the proceeding until they were consummated.[3] The plan provides that delivery of assets to

the new corporation "shall be free * * * of any liens * * * of any liability, claim or demand of or against the debtor * * *."

In the final order of this Court it is recited, "* * * that all rights and interests of stockholders and creditors of the debtor be, and they hereby are terminated." By this action, through the corporate entity, plaintiff "stockholders and creditors" would go back and recapture some alleged rights and interests they had in the old corporation.

Plaintiffs' argument based on the same stockholders in each corporation, even if sound (creditors of the "debtor" were stockholders, and of a class in the new corporation not in the old corporation), is answered in the very nature of the claim in suit. No effort was made to tax either creditors or stockholders of the old corporation of "debtor." All that was taxed was corporate income. The loss, the basis of plaintiffs' claim, is purely a corporate loss.

Plaintiffs also argue that each corporation operated the same business as evidence they are the same corporation or taxpayer. While the loss may have resulted from operating the same kind of business, making the same kind of beer in the same vats, and delivering it with the same employees and same trucks, and keeping the accounts in the same books as the old corporation, such continuity was deliberately planned during the elimination of the old corporation and organization of the new one. Had the old corporation by private sale sold its business to the new corporation, the same continuity could have been provided for. The test is not physical operation of the business, but ownership and consequent tax liability. The old corporation cannot be held to answer for the losses of the new corporation, nor the new corporation for the losses of the old. The latter was one reason for

the excess, if any, of the amount of such net operating loss over the net income for the second preceding taxable year * * *."

2. The first sentence of the plan reads in part—"First: That upon confirmation of this plan by the Court, *a new corpo-*

*ration be organized.*" The "new" corporation was organized and is the plaintiff corporation.

3. The fate of Gast Brewery, Inc., as a corporation is not revealed by the record.

shedding the burden of the old corporation and organizing a new corporation. Having planned and reaped the advantage of discarding the old corporation by organizing the new one, plaintiffs cannot rescind its action in part to recoup part of the benefits attached to the old corporation and still disown burdens of the old corporation.

Nor are plaintiffs correct in urging that reorganization was by order of this Court and therefore they are without the embarrassment that would attach if it were voluntary. In its inception the plan was voluntary. This Court could not force it on unwilling creditors. After the statutory acceptance this Court merely approved the plan.

The ruling of the Supreme Court in New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348, we find controlling. The New Colonial case arose under section 204(b) of the Revenue Act of 1921,[4] but that Act and section 122(b) (A) are substantially the same as requiring identity of "taxpayer," for it to be entitled to obtain benefits under the Act. To the extent that the authorities of lower courts cited by plaintiffs, on cases of this character, follow this case we are in accord with them, otherwise they are not declaratory of the law, in our judgment. It would serve no purpose to extend this memorandum by discussing them.

If the absence of sameness of the taxpayer in this case were doubtful, because the new corporation grew out of a section 77 reorganization proceeding, and this is the base of plaintiffs' claim, the Act of July 15, 1947, 61 Stat. 324, § 1, should leave no doubt on the matter and as to the Congressional plan and intent. This Act amended section 77 of the Bankruptcy Act by allowing railroads *only* to carry over losses and unused excess profits credits from predecessor corporations, to new corporations resulting from reorganization under section 77.[5]

If plaintiffs' contention was correct there would have been no occasion for the 1947 amendment. Observe how the 1947 Act, giving such privilege to railroads, is hedged with caution and regulation. To adopt a general carry-back privilege, such as we are now called on to do in this case,

4. "If for any taxable year beginning after December 31, 1920, it appears upon the production of evidence satisfactory to the Commissioner that *any taxpayer* has sustained a net loss, the amount thereof shall be deducted from the net income of the taxpayer for the succeeding taxable year; and if such net loss is in excess of the net income for such succeeding taxable year, the amount of such excess shall be allowed as a deduction in computing the net income for the next succeeding taxable year; the deduction in all cases to be made under regulations prescribed by the Commissioner with the approval of the Secretary." 42 Stat. 227.

5. "That (a) if a railroad corporation (as defined in section 77m of the National Bankruptcy Act, as amended) (hereinafter referred to as successor corporation) has acquired, prior to January 1, 1950, property from another such railroad corporation (hereinafter referred to as predecessor corporation) in a receivership proceeding, or in a proceeding under section 77 of the National Bankruptcy Act, as amended and if the basis of the property so acquired is determined under section 113(a) (20) of the Internal Revenue Code, then, for the purposes of the determination under the Internal Revenue Code of—

"(1) the 'net operating loss carry-over' from any taxable year beginning after December 31, 1938, under the law applicable to such taxable year, and

"(2) the 'excess profits credit carry-over' or the 'unused excess profits credit carry-over' from any taxable year beginning after December 31, 1939, under the law applicable to such taxable year, the net operating losses and the unused excess profits credits of such predecessor corporation for the taxable year in which the acquisition occurred and for the two preceding taxable years shall be carry-overs to such successor corporation in the manner and to the extent provided in regulations prescribed by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, as necessary to apply such net operating losses and unused excess profits credits as carry-overs so far as possible as if the predecessor corporation had been made use of in such proceeding instead of the successor corporation." 61 Stat. 324, Act of 1947, Public Law 189, 26 U.S.C.A. § 122 note.

might in many cases run contrary to the foundation of the Court's approval of a plan. These are matters that can be considered and controlled in an Act like that of 1947.

In reporting the 1947 Act, the House report reads as follows:

"Under existing law, if a railroad corporation is organized in a receivership proceeding or in a proceeding under section 77 of the National Bankruptcy Act, as amended, and the reorganization is effected through the organization of a new corporation, *any carry-overs of net operating losses or unused excess profits credits of the old corporation cannot be used by the new corporation. The reorganized corporation is regarded as a different taxpayer from the old corporation.*" H.Rep. No. 624, 80th Cong., 1st Sess., p. 1. (Emphasis added.)

The report and the 1947 Act that the "reorganized corporation is regarded as a different taxpayer from the old corporation" comes after the Supreme Court holding in the New Colonial case and conforms to it in our opinion.

Plaintiffs' complaint is dismissed at plaintiffs' costs.